UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2004 AUG 18 P 2: 08
U.S. DISTRICT COURT
HARTFORD, CT.

UNITED STEELWORKERS OF AMERICA :
LOCAL 134L, :
 :
    Plaintiff, :
 :
v. : No. 3:03CV201(DJS)
 :
UNITED ALUMINUM CORPORATION, :
 :
    Defendant. :

## MEMORANDUM OF DECISION AND ORDER

Plaintiff, United Steelworkers of America Local 134L ("union"), brings this action against defendant United Aluminum Corporation ("employer") pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. The union seeks an order compelling the employer to participate in binding arbitration pursuant to the Collective Bargaining Agreement ("CBA") between the parties. On April 17, 2003, the court ordered the parties to submit proposed findings of fact and conclusions of law because this case is to be tried to the court, and there did not appear to be any disputed issues of material fact. (See Dkt. # 15). Upon review of the parties' submissions, the court finds that there is no issue of material fact. For the reasons set forth herein, this action is **DISMISSED**.

## I. FACTS

Plaintiff is a labor organization within the meaning of 29 U.S.C. § 185(b) and represents employees in an industry affecting commerce within the meaning of 29 U.S.C. § 185(b). Defendant is an employer within the meaning of 29 U.S.C. § 152(2), and is engaged in commerce and in an industry affecting commerce within the meaning of 29 U.S.C. § 152(6) and (7). Plaintiff and defendant are parties to a written collective bargaining agreement ("CBA"), which sets forth a grievance procedure culminating in binding arbitration. The term "grievance" is defined in the CBA as "a difference concerning the application or an interpretation of a specific provision of" the CBA. (Dkt. # 1, Ex. A, Article XVI at 25).

On April 17, 2001, the union filed a grievance under the CBA "asserting that employees in certain job classifications should receive wage increases because they [have] been assigned additional duties." (Dkt. # 1, ¶ 6). With respect to this issue, the CBA provides the following:

> When and if, from time to time, the Company at its discretion creates or establishes a new job or substantially changes an existing job:
>
> (a) The Company will install a wage rate for said job.
>
> (b) The wage rate will be explained to the Union representative with the object of obtaining agreement in the rate. The rate may be installed without the agreement subject to adjustment as provided below.
>
> (c) When a wage rate for a new job is installed, the

> employee or employees affected, or their Union representatives may at any time within thirty (30) days from the installation of the rate file a grievance alleging that such rate does not bear a fair relationship to the wage structure in the plant. Such grievance shall be adjusted under the grievance machinery of this agreement. If the grievance be submitted to arbitration, the decision shall be effective as of the date when the employee commenced work on the new job.

(Dkt. # 1, Ex. A, Article XXI at 35). The union contended that, because the 23 Mill Operators and Assistant Mill Operators and the 24 Mill Operators and Assistant Mill Operators drove the "jitney," the rates of pay for these four classes of employees should be increased accordingly. Pursuant to the CBA, the grievance was presented to the American Arbitration Association for resolution, which set a hearing for October 17, 2002.

At this hearing, the arbitrator questioned whether he had the authority to install a new wage rate under Article XXI Section (c) of the CBA. Specifically, the arbitrator questioned whether Section (c) of Article XXI, which provides for the filing of a grievance challenging the installation of a wage rate, applies only to a situation where the employer creates a "new job" and not to a situation where the employer adds new responsibilities to an existing job. Shortly thereafter, the arbitrator suspended the taking of evidence regarding the proper wage rate so that he could consider arguments regarding whether he had the authority to provide the remedy set forth in Section (c). The union declined to submit a brief and commenced this

action instead.

## II. DISCUSSION

Section 301(a) of the Labor Management Relations Act provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). "Section 301 promotes a higher degree of responsibility upon the parties to such collective bargaining agreements." Niagara Hooker Employees Union v. Occidental Chemical Corp., 935 F.2d 1370, 1375 (2d Cir. 1991) (alteration, internal quotation marks omitted).

With respect to arbitration in the labor context, "Section 301 is also the vehicle for enforcing the fundamental federal labor policy favoring recourse to private arbitration." Id. "Under Section 301, federal courts are to fully effectuate a dispute resolution process designated in a collective bargaining contract. Disputes under a collective bargaining contract with an arbitration clause are presumed to be arbitrable. Courts are not to delve into the substantive provisions of such a collective bargaining contract, since this would usurp the function of the arbitrator." Id. Although courts are forbidden from

interpreting the substantive provisions of a CBA, "the question of arbitrability- whether a collective bargaining agreement creates a duty for the parties to arbitrate a particular grievance- is undeniably an issue for judicial determination." AT&T Technologies, Inc. V. Communications Workers of America, 475 U.S. 643, 649 (1986).

The dispute at the core of this lawsuit concerns whether the CBA creates "a duty for the parties to arbitrate a particular grievance." Id. In its grievance the union has requested that the arbitrator install a new wage rate. The union argues that the arbitrator, by ordering supplemental briefs regarding whether he could install a new wage rate under Article XXI Section (c) of the CBA, questioned the arbitrability of the union's grievance. Therefore, the union argues that the court should decide whether the arbitrator has the authority to install a new wage rate under Article XXI Section (c) of the CBA.

The authority to resolve the question the union presents to the court lies with the arbitrator. The question of whether the arbitrator has the authority under the CBA to install a new wage rate in these circumstances is necessarily implicit in the union's grievance. Resolution of this question turns on interpretation of the CBA. The CBA vests the arbitrator with the authority to resolve "a difference concerning the application or an interpretation of a specific provision of" the CBA. (Dkt. #

1, Ex. A, Article XVI at 25). Therefore, before the arbitrator can decide what the new wage rate should be, he must decide whether the CBA allows him to install a new wage rate, which involves interpreting the CBA.

The final issue before the court is to determine an appropriate remedy. The union seeks an order from this court compelling the arbitrator to decide its grievance. As the union states its grievance, the union seeks an order form the court compelling the arbitrator to install a wage rate or decide that the current wage rate is appropriate. As previously discussed, the arbitrator, and not the court, has the authority to decide whether the union can avail itself of the procedure set forth in Article XXI Section (c) of the CBA. Because the court cannot grant the union the relief it seeks, the proper remedy in this case is dismissal of the union's complaint.

### III. CONCLUSION

Under the CBA between the union and the employer, the arbitrator, and not the court, has the authority to decide whether the union can avail itself of the procedure set forth in Article XXI Section (c) of the CBA. Therefore, the union's complaint is **DISMISSED**. The Clerk of the Court shall close this file.

So ordered this 16th day of August, 2004.

                                        DOMINIC J. SQUATRITO
                                        UNITED STATES DISTRICT JUDGE